Houston Printing Company v. J. L. Moulden.

Decided March 13, 1897.

1. **Libel Per Se.**

A publication which falsely charged an officer with chaining to a prisoner, whom he was transporting by rail, the wife of such prisoner, who was innocent, is libelous per se, and a petition alleging such publication by defendant concerning plaintiff states a cause of action, though special exceptions have been sustained to the allegations therein of special damages.

2. **Same—Charge of Crime.**

It is not necessary that the language of the alleged libel should in terms charge that plaintiff has committed a crime, naming it: it will be actionable if calculated to induce persons who read it to believe that the plaintiff was guilty of acts which would constitute a crime.

3. **Same—Identifying Person.**

It is not necessary, to constitute libel, that the person be named if pointed out by circumstances and ascertainable.

4. **Jury—Sheriff as Plaintiff—Change of Venue.**

It was not ground for a change of venue by defendant, nor for a challenge to the array, that the jury,—selected by jury commissioners,—were summoned by the sheriff, who was plaintiff in the suit.

5. **Same—Talesmen.**

Where the sheriff was a party to the suit it was proper for the court to have talesmen necessary to complete the jury summoned by a constable sworn for that purpose.

6. **Libel—Evidence—Person Meant.**

Plaintiff may call witnesses to show that on reading the libel they understood him to be the person aimed at.

7. **Libel—Charge—Slander.**

It was not erroneous for the charge in an action for libel to define to the jury the meaning of slander, where that term enters into the court's charge on libel.

8. **Libel Defined.**

See charge defining libel held sufficient though not including all defamatory publications.

9. **Libel Per Se.**

See publication which the court might properly instruct to be libelous per se as charging plaintiff with a crime and also imputing to him misconduct and cruelty in office.

10. **Same—Crime—Moral Turpitude.**

It is not necessary that the charge in order to be libelous should impute a crime involving moral turpitude.

**11.  Libel—Newspaper—Privilege.**

See charge as to privilege of newspapers to truthfully chronicle acts or conduct held sufficiently favorable to defendant, though the truth of the publication was not contended for.

**12.  Damages—Actual—Exemplary—Verdict.**

When the verdict is for actual damages only, errors in submitting issue of exemplary damages are immaterial.

**13.  Charge—Character of Plaintiff.**

Where the good character of plaintiff was not attacked, defendant cannot complain that without evidence the court submitted issues based on their finding that he was of good character.  It was presumed good if not attacked and the issue need not have been submitted to them.

**14.  Same—Submitting Libel to Jury.**

Defendant cannot complain that the question whether the publication was libelous was left to the jury, where it was libelous per se and the court should have so instructed.

**15.  Charge—Damages—Actual—Nominal.**

Having in his charge authorized only nominal damages, unless actual damages were proved the court properly refused a requested charge to the same effect.

**16.  Identifying Person Meant.**

It was not necessary that the article in itself or by itself so pointed out the plaïn tiff as to inform any person that it meant him.

**17.  Damages.**

Injury to feelings is the subject of compensation when libelous words are actionable in themselves.

**18.  Same.**

Verdict for $1000 for libel sustained as not excessive, though followed by prompt retraction of statement.

APPEAL from the District Court of Collin County.   Tried below before Hon. J. E. DILLARD.

*Capps & Cantey* and *Jenkins & Pearson,* for appellant.—The court erred in overruling defendant's general demurrer for that plaintiff's petition did not allege a cause of action, and particularly so after the court had sustained defendant's special exception No. 5, directed at so much of the allegations in said petition as alleged special damages.

The court erred in overruling defendant's motion to dismiss the plaintiff's suit for the reason that, at the time said motion was made and urged, the court had sustained defendant's fifth special exception and excluded all of plaintiff's allegation of special damages and plaintiff's counsel had announced that they would not file a trial amendment. Under this state of the record no damages were claimed and no cause of action was presented by the petition.   13 Am. & Eng. Ency., Law, 349-434, 299; Newell, Def., Lib. and Sl., 67-84, 97-102; Pollard v. Lyon, 91 U. S., 225; Cotulla v. Kerr, 74 Texas, 94; Printing Co. v. Copeland, 64 Texas, 356.

The court erred in overruling defendant's special exception on the ground that the averments of the alleged libel affirmatively show that the same are not libelous per se and no special damages are averred. Same authorities.

The court erred in refusing to sustain defendant's first and second special exceptions, to-wit: Because it affirmatively appears, from the allegations setting out the alleged libelous publication, that the same does not mention the plaintiff directly or indirectly, neither does it refer to him or describe him in any manner whatever; and because the allegations setting out the alleged libel do not refer to the plaintiff or his office by name, fame or description nor include or reach him by naming, mentioning or description of any circumstance known to the public, or name or mention any transaction, the connection of which will refer or point to the plaintiff by his name, fame or repute in public. Newell, 256, sec. 17; 17 Am. & Eng. Ency., Law, 391; Townshend, Lib. and Sl., 163, 164, 135; Odgers, Lib. and Sl., 127, 118.

The court erred in overruling defendant's fourth special exception, which was as follows, to-wit: Because the alleged libel set out does not charge or state that the plaintiff chained said Foreman and his wife together, nor that plaintiff was guilty of inhuman or cruel treatment, nor that he falsely imprisoned said Foreman's wife, and the innuendo in this behalf is not explanatory of said alleged libel, but an effort to exaggerate and enlarge and extend, and change the meaning of the same in a manner not warranted, and to render certain a statement of such uncertainty as not to authorize such a pleading. Odgers, 120; Newell, 103, 248, 249; Tebbetts v. Goding, 9 Gray, 254; Sparrow v. Maynard, 8 Jones, L. (N. C.), 195.

The sheriff of Collin County, being the plaintiff in this case, was clearly disqualified from summoning a jury to try this cause. The deputy sheriffs appointed and serving under him, were subject to a like disqualification. Our statute direct that the regular venire drawn by the jury commissioners for the District Court shall be delivered, by the clerk to the sheriff who shall summon the same. It further provides that, if the panel shall be incomplete, the court shall administer to the sheriff of the county a stipulated oath and it shall be his duty thereupon to summon talesmen sufficient to fill the panel. In the absence of statutory authority, no other person could become qualified to act in this capacity; no lawful jury could, therefore, be summoned to try this cause and the court should have ordered a change of venue. Rector v. Hudson, 20 Texas, 234.

The plaintiff in the case was disqualified to summon a jury to try his own cause, or any part thereof, and there is no authority in the statute which authorizes the constable of the precinct to summon talesmen for the District Court. The defendant should not have been required to try its case before a jury summoned and obtained as this jury was, and the challenge to the array should have been sustained, and a refusal to do so is clearly reversible error. Rector v. Hudson, 20 Texas, 234; Murfree, Sheriffs, sec. 385, 387; Cooley, Torts, 191, 192; Morton v. Crane, 39 Mich., 528; Scanlan v. Turner, 1 Bailey, 421; Bush v. Meacham, 53 Mich., 574; Dyson v. Baker, 54 Miss., 24; Singletary v. Carter, 1 Bailey, 467; Brown v. Gordon, 1 Greenl., 165; Douglas v.

Gardner, 63 Me., 462; Dane v. Gillmore, 51 Me., 544; May v. Walters, 2 McCord, 470.

The court erred in permitting the witness, Clint Thompson, to testify for the plaintiff over defendant's objection with reference to the alleged libelous article. That he (Thompson) understood the same to refer to the plantiff, and particularly was this error after said witness had admitted that he had seen other publications in different papers and heard other facts which caused him to understand to whom the defendant's article and publication referred. Newell, 308, sec. 33, citing 37 Minn., 277; 5 Johns., 211; 4 Wend., 320; 42 N. Y., 581; 54 Mass., 278; 33 Me., 326; 73 Pa. St., 333; 3 Exch., 200; 68 Iowa, 400.

To constitute oral defamation (or slander) actionable per se, all the authorities hold that the same must charge some crime involving moral turpitude. The definition given by the court was not the law and misleading as to this case. The parties relying on said language as actionable, without any proof of special damages. Besides, the issue of slander was not involved in the case and its submission and definition became obvious error in view of the fact that the court directs the jury in a succeeding paragraph of its charge to "find for plaintiff if they believe the statements to be untrue, libelous and slanderous."

The limitations of liability set out by the court in its charge, determinate of actionable language is not the law of either slander or libel. The giving of this charge tended to mislead the jury into the belief that any untrue statement which tended to bring a person into disrepute with others, was all that was necessary; which is not the law, particularly so of this case (there being no special damages).

The article was not sufficient to be actionable per se, as "touching plaintiff" in his office, and besides that element of damage had been eliminated by ruling on defendant's demurrer. As to the plaintiff, individually, if the question as to whether or not the article was libelous per se, should have been submitted to the jury; then they should have been instructed to find whether or not it did charge plaintiff with the crime of false imprisonment, as alleged. As submitted the jury had no proper legal guide to determine either actionable libel or slander per se. And were authorized and permitted under the instructions to indulge their own ideas of libel, and that not even limited to the offense (false imprisonment) as charged in plaintiff's petition. Cotulla v. Kerr, 74 Texas, 92; Newell, 290; Young v. Clegg, 93 Ind., 372.

*Smith & Evans* and *Abernathy & Beverly*, for appellee.

COLLARD, ASSOCIATE JUSTICE.—This is an action for libel brought by appellee against The Houston Printing Company, the proprietor and publisher of a daily newspaper—The Houston Post, published in the city of Houston, Texas.

Plaintiff alleged that he was at the time of suit and has been for two years past the sheriff of Collin County, has long been a citizen of the

county, of good reputation, and has at all times commanded the confidence and respect of his neighbors and acquaintances, has never been charged with any offense against the laws of the State, and more especially with the offense of false imprisonment, and has never been accused with cruelty or inhumanity to prisoners in his charge until the publication of the libel herein complained of.

He averred that in the summer of 1894 one T. R. Foreman was married to Alice Godwin,—still his wife; that at the October term of the District Court of Collin County the grand jury of the county indicted T. R. Foreman; that a warrant was issued for his arrest and he was thereunder arrested by the sheriff of Jefferson County, and afterwards, on January 25, 1895, plaintiff conveyed the prisoner from Jefferson County to the town of McKinney in Collin County; that plaintiff was on the morning of January 25, 1895, at the Grand Central Depot in the city of Houston, Texas, and had with him under arrest the said T. R. Foreman, and they were accompanied by Alice Foreman, wife of the prisoner, but she was not restrained or under arrest.

It is averred that the paper had a large and extensive circulation in the State, and especially in Collin County; that the company did falsely and wickedly compose, publish and circulate in said paper of and concerning the premises and matters and things herein alleged, and did falsely, wickedly and maliciously publish and cause to be published and circulated at the said date, to-wit, January 25 and 26, 1895, in Collin County, the following article:

"Indignation was expressed at the chaining together of a man and woman. Considerable indignation was expressed at the Grand Central Depot yesterday at a species of brutality that ought to deserve some punishment. A young man and his wife were chained together by the necks, and were in charge of an officer en route to some town in North Texas. The young man, it seems, lives at Beaumont, and in order to get license to marry the girl he swore falsely as to her age. The girl herself had committed no offense known to the law, and yet she was treated just as a convicted felon. It is the policy of the law to encourage the assumption of the conjugal yoke, rather than to punish those who have assumed these responsibilities."

Plaintiff averred that the above and foregoing statements were made, printed, published and circulated in Collin County, Texas, by and at the instance of the defendant, of and concerning this plaintiff, and meant to charge, and did charge, and it was intended that the readers thereof should understand, and they did so understand, that the plaintiff herein had been guilty of the crime of false imprisonment and had so chained a woman to her husband; that the words "chained to her husband" were intended to mean and did mean, that the plaintiff herein had chained said woman to her husband, and that he had done so without excuse and justification; that said article was intended to be understood by those who read it as follows "Indignation was expressed at the chaining together of a man and woman. Considerable indignation

was expressed at the Grand Central Depot (meaning that the people at the Grand Central Depot in the City of Houston were indignant and gave expression to their indignation) yesterday at a species of brutality that ought to deserve some punishment (meaning thereby that plaintiff had treated the said T. R. Foreman and his wife, Alice Foreman, as though they were brutes and that they were cruelly and unmercifully treated by plaintiff and meaning thereby that plaintiff deserved to be punished for such treatment).   A young man and his wife (meaning T. R. Foreman and his wife, Alice) were chained together by the necks, and were in charge of an officer (meaning that they were in charge of plaintiff and that plaintiff had them both under arrest and that plaintiff had them chained together by their necks) en route to some town in North Texas. The young man (meaning T. R. Foreman), it seems, lives at Beaumont, and in order to get license to marry the girl (meaning his wife, Alice Foreman) he (meaning T. R. Foreman) swore falsely as to her age. The girl herself had committed no crime known to the law, and yet she was treated just as a convicted felon (meaning therein and thereby that the said Alice Foreman had committed no crime and that plaintiff had treated her just as though she had been convicted of a felony and was lawfully in his charge as an officer, and meaning that plaintiff had cruelly and unmercifully treated and abused the said Alice Foreman, and that he had her in charge and in chains, without excuse or warrant of law, and that he was guilty of falsely imprisoning her, the said Alice Foreman).   It is the policy of the law to encourage the assumption of the conjugal yoke, rather than to punish those who assume these responsibilities (meaning therein and thereby that the said plaintiff had cruelly and unmercifully treated and abused the said T. R. Foreman and his wife, Alice Foreman)."

The petition then shows that plaintiff had said T. R. Foreman at the depot mentioned, in his custody as his prisoner, and that Alice Foreman accompanied them of her own free will, but was in no manner restrained of her liberty by plaintiff or any one else; that it was not true that Alice Foreman was chained to her husband or was in any manner restrained of her liberty, as charged in the libelous article, and it was not true that she was chained by the neck to her husband, or was in any manner chained, and that defendant had no reasonable or probable cause for believing that she was so chained or restrained of her liberty; that it was not true that Alice Foreman, was in charge of plaintiff or any other officer, nor that she was treated as a convicted felon by plaintiff or any one else, nor that plaintiff cruelly and unmercifully treated and abused Alice Foreman or T. R. Foreman, nor that any one else had her in charge or in chains without warrant of law, nor that plaintiff was guilty of falsely imprisoning her or T. R. Foreman.   And plaintiff averred that all and each of said statements so printed, published and circulated, so far as they accuse or insinuate that plaintiff was or had been guilty of the crime of false imprisonment, or any other crime, and all statements and insinuations therein reflecting upon his character or

upon the conduct of plaintiff to the effect that he had been guilty of brutal, barbarous or disgraceful acts or conduct as an officer or citizen, are utterly false and defamatory.

Other averments were made and damages claimed, which need not be set out.

Defendant filed a general demurrer and special exceptions to the colloquium and innuendo as insufficient in certainty in the language of the article as referring to plaintiff by name, fame or reputation, and that the article was insufficient to impute offense charged by innuendo, or cruel treatment.

A special exception called in question the sufficiency of averments claiming special damages, on the grounds that they were vague, indefinite and uncertain.

To the merits defendant answered that none of its officers or agents engaged in publishing the Houston Post knew or were acquainted with plaintiff or had any knowledge of his appearance in Houston or of the facts by him alleged; that it did not direct the article at plaintiff and that the same was not written of and concerning him; that its local reporter in the city of Houston had been informed by the editor of the Beaumont Journal, a reputable newspaper man, that such an occurrence as detailed in the paper had been witnessed at the Grand Central Depot in Houston, and it had caused such information to be published; that after the publication of the article it ascertained by telegram that plaintiff claimed that the article referred to him and his conduct, and that it immediately published an article fully correcting any supposed injury as claimed by plaintiff and a complete retraction of the same so far as its reference to plaintiff was concerned.

The court overruled all demurrers and exceptions except that which was directed to plaintiff's claim of special damages, which was sustained.

The trial resulted in a verdict and judgment for plaintiff for $1000, from which defendant has appealed.

*Findings of Fact:*—Giving to the verdict its proper effect, we find the facts proved on the trial as follows:

An identified copy of the Houston Post, dated January 26, 1895, which contained the article set out in plaintiff's petition.

Plaintiff, sheriff of Collin County, was the officer in charge of the prisoner, Foreman, who had been arrested on the charge of false swearing, as alleged. This prisoner he had received at Beaumont and was taking him to McKinney, Collin County, in obedience to a warrant for his arrest. His wife, Alice, was with the party, but was not under arrest, and was in no way confined or chained. The prisoner was handcuffed and she kept her hand over his fetters to prevent their being observed.

Persons who read the article and knew the facts knew to whom it applied—that it applied to plaintiff.

The Houston Post was a daily newspaper published in Houston, Texas, by defendant, and had quite a general circulation in Texas, mostly in South and Southeast Texas, and circulated three or four copies in Collin County.

Plaintiff received a copy of the paper containing the article, mailed to him by some one at Houston, the day after he came home or the next day. He testified, and we find the testimony is true: · "When I read that article I don't know that I could hardly tell you what effect it had on my mind and feelings. It worried me considerably—a report against me like that. I could not tell my feelings hardly as far as that was concerned. In fact, I did not know how much danger I was in. When I first discovered this article in the Post I had gotten back from the trip. I received letters and envelopes enclosing clippings of this article published in the Post by mail. The address was to the sheriff of Collin County. I reckon it was the second morning after I came back that I received that clipping. We arrived in Houston on the morning of the 25th of January at 7 o'clock and waited there a couple of hours and got to McKinney at 8 o'clock on the 25th, I think it was. I get the Dallas News every morning, but I do not get the Fort Worth Gazette every day. I don't remember whether I read the article in the Dallas News on the morning of the 26th or not. There was a Fort Worth paper, I believe, that some one called my attention to first."

The way the article came to be published in the Post, as stated by the editor, was: "A Mr. Kelly, a newspaper man from Beaumont, arrived in Houston that morning. I got to talking to him and he said, 'There was considerable indignation at the depot this morning.' I asked him how? He said there was an officer who had a man and his wife in custody. I understood him to say, and he seemed to be somewhat worked up over it himself, that they were, or that he had them, yoked together. I afterwards recollected that he might have meant that in a figurative rather than a literal sense. He did not state who the officer was, nor who the man was, nor his wife. I had no knowledge of any of them, nor who any of them were. Kelly is a newspaper man; has been in the newspaper business all his life. An editor getting news must get his information from others, and must necessarily rely on somebody else. If you know a man and that he is a truthful man, you place reliance in him. The man Kelly was in good repute." He stated that he wrote the article; did not know the sheriff of Collin County, nor Mr. and Mrs. Foreman. "I did not know who it referred to, nor did I know any of the parties referred to, nor what sort of an officer it referred to." He also testified: "I don't know anybody else connected with the Post who had anything to do with the writing of the article. It occurs amongst the locals, which is any part of the paper." He also said: "I could not have had any ill feeling against Mr. Moulden at the time this article was written, because I did not know there was such a man in existence. * * * I believed the statement made to me and placed the utmost reliance in the man who made it. * * * I did not go to the

Grand Central Depot on the morning that this was related to me. The word Kelly used to me was 'yoked.' Sometime afterwards I read a letter from Mr. Kelly in the Galveston News, and it occurred to me that he might have meant that in a figurative sense. He did not say where they were going—he only said to North Texas."

The managing editor of the Post testified—and his testimony is true: "I did not know Mr. Moulden and had never heard of him. * * * I had known Mr. R. E. Kelly for several years; considered him a reliable man as a reporter." The first intimation the witness had of anything wrong was when some one called his attention to a correction that appeared in the Gazette the next day. "As soon as I found that plaintiff considered the article as reflecting on him I did all that I could to exonerate him. I published two articles—one on the editorial page and the other where it occurred. The letter of Mr. Kelly was published then. * * * We made these publications because we feared we might have done a good man injustice, and did so as soon as we heard of it. Moulden did not write us any letters about it or ask us to make any publication before he brought suit against us. The publication charged to be libelous was not directed to any individual. It was speaking about an officer, but no particular individual. I presume it was directed at the officer that had the young man in custody."

The article of retraction attached to defendant's answer was read in evidence. It reads: "The Post regrets extremely that it should have been led into publishing the statement that a sheriff from Northern Texas had handcuffed the young wife who was going with her husband in charge of the sheriff to answer a criminal charge. The statement was made by reputable persons, who claimed to have seen the situation with their own eyes, and hence the misrepresentation and the injustice to a humane and highly esteemed officer and gentleman."

The second article is as follows: "Not Shackled Together. The reported handcuffing of a man and wife a mistake. In The Post a few days ago it was mentioned that an officer from North Texas had passed through the city with a man and wife shackled together. The couple, it was stated, had been arrested at Beaumont, the man charged with false swearing to the girl's age in order to get a marriage license, but there was no charge at all against the young wife. Neither the sheriff's name nor the name of the young couple were given in The Post, but it seems that there was a mistake as to the allegation that they were shackled together. Mr. R. E. Kelly, editor of the Beaumont Journal, informed a Post man of the circumstance upon which the article was based, and the following, written by Mr. Kelly to the Galveston News, explains his position in the matter: 'While at breakfast in the dining room of the Grand Central Hotel on the morning of Friday, 25th inst., I recognized a young woman whom I had seen the day before in Beaumont, and who was reported as being the wife of a young man arrested a few days previous in this city on a charge of false swearing. She was sitting beside a young man, whom I took to be her husband, her right arm

around his shoulders and her left resting against or on his hands. The man's hands being fettered with handcuffs, and one of the woman's hands being against or on top of the man's, she presented the appearance of being bound to him with steel chains. So thoroughly convinced was I that such was the case that I put the question to the girl (having engaged them in conversation), "What have you done that you should be handcuffed?" The woman's answer to this question was a flood of tears, which strengthened my conviction that she was actually manacled to the man. She never once removed the hand that appeared to be fastened and to my eyes seemed actually handcuffed; yet I now realize that the girl may not have been handcuffed,—that she may have placed her hand in that position with a view of concealing from the people passing to and fro the handcuffs upon her husband, and that when I referred to the matter, her tears broke loose through mortification over her husband's plight. Mr. W. H. Batholomew, who was with me at the time, and who sat at .breakfast with me, left the depot as I myself did under the impression that the man and woman were handcuffed together. He has been shown this letter and agrees with all statements herein. I believe, if the employes of the Grand Central dining room and the hack drivers about the door were questioned, they would answer without hesitation that the man and woman were handcuffed together. Yet, as I have said, they may not have been. Respectfully, R. E. Kelly."

*Opinion.*—The first assignment of error is to the effect that the court below erred in overuling defendant's general demurrer, as the petition did not allege a cause of action, and particularly so after the court had sustained defendant's special exception No. 5, directed to so much of the allegations in the petition as alleged special damages.

And, second, that the court erred in overruling defendant's motion to dismiss the plaintiff's suit, for the reason that at the time said motion was made and urged the court had sustained defendant's fifth special exception and excluded all of plaintiff's allegation of special damages and plaintiff's counsel had announced that they would not file a' trial amendment.

The fifth special exception, referred to in defendant's answer, is an exception to special damages claimed by loss of fees of office, resulting from the publication, because the averment of the loss, the date, or the person from whom the fees would have come, the writ or process by name or description or style of suit in which the loss occurred, is not stated.

The order of the court on the exception No. 5 is: "The fifth exception to said petition, alleging special damages, be and the same is hereby in all respects sustained."

The publication was libelous per se, and the action was maintainable for the natural injuries flowing therefrom, including injury to the feelings of plaintiff. It was not necessary to show a specific pecuniary loss. Compensation for the injury is the correct rule in such cases.

The publication was also libelous in another aspect,—in the accusation of the officer in his treatment of the wife, she having committed no crime. Defamatory publications of an officer in respect to his office are actionable per se if untrue, and this is true with respect to many other vocations. 13 Am. & Eng. Ency., Law, 355, 356, and notes on same, and pages 357 to 360, inclusive; Forke v. Homann, 14 Texas Civ. App., 670; Towns. on Slander and Libel, 221, 222, 223, 232 et seq., and Id., 242 et seq.; Belo v. Fuller, 84 Texas, 450; Newell on Slander and Libel, 176 to 178, inclusive.

It is not necessary that the language of the alleged libel should in terms charge that plaintiff had committed crime, naming it; it will be actionable if calculated to induce persons who read it to believe that the plaintiff was guilty of acts which would constitute a crime. Zeliff v. Jennings, 61 Texas, 459; Rev. Stats., 1895, arts. 3529, 3534.

From the foregoing it will be seen that it is our opinion, and we do hold, that the court did not err in overruling the general demurrer to the petition and the motion to dismiss the suit after the court had sustained the exception to the stated special damages.

For the same reasons it is apparent that there was no error in overruling defendant's special exception to the petition, which is that "the averments of the alleged libel affirmatively show that the same are not libelous per se."

Appellant also complains by assignment that the court erred in overruling the first and second special exceptions to the petition, because the petition affirmatively shows that the libelous publication does not mention the plaintiff, directly nor indirectly, nor does it refer to him or describe him in any manner whatever; and because the alleged libel does not refer to plaintiff or his office by "name, fame or description," nor include or reach him by naming, mentioning or description of any circumstance known to the public, nor name any transactions which refer or point to the plaintiff.

It was not necessary, to make the article published libelous, that plaintiff should have been named, if he was pointed out by circumstances. The officer in charge of the prisoner, Foreman, was the person libeled, and the facts show that the plaintiff is that person. The libel, with the colloquium and innuendo, undeniably identifies the plaintiff as the officer guilty. It is only necessary that the words refer to some person ascertainable from the words used. Any one who was or should become conversant with the facts could not mistake the person and the officer accused. 13 Am. & Eng. Ency., Law, 391-392 and notes; Newell on Slander and Libel, p. 258, sec. 22, illustration 4. The words applied to plaintiff and could not apply to any one else. Odger on Libel and Slander, 126 to 131, inclusive, and notes.

The court did not err as assigned.

It is next insisted by appellant that the court erred in refusing to order a change of venue of the case, because the plaintiff was the sheriff of Collin County and had summoned the jury present, towit, thirteen

men of the regular venire, some of whom were then engaged in another case,—the statute providing that the list of regular jurymen drawn for the District Court should be delivered to the sheriff and summoned by him, and in the event of an incomplete panel for the trial of the cause the duty of summoning talesmen was imposed upon him by the statute, who, being the plaintiff, was not competent to summon jurymen to try his own case.

The statute does not authorize a change of venue upon the ground stated in the motion. It would be of no consequence who summoned the jurors selected by the jury commissioners. The fact that the sheriff —the plaintiff—summoned them could not prejudice either party to the suit. The clerk is required to draw the requisite number of jurymen and furnish a list to each of the parties to challenge from. The sheriff has no power in drawing the jury or making the lists. The fact that talesmen would have to be called to complete the panel would not be a ground for changing the venue. The sheriff could not summon them. As we will see hereafter, the court would not be powerless to have a jury legally summoned without injury to either party to the suit.

The court appointed one Joe McKinney, a constable of Collin County, and after administering to him the statutory oath for sheriffs in regard to summoning jurors, directed him to summon talesmen to make up the requisite number of jurymen.

Appellant insists that this was erroneous, because it was not authorized by the statutes of the State, which only authorize the sheriff to summon jurors for the District Court.

There is in fact no special provision of the statute giving such authority or directing what the court shall do in such a case, but we do not believe the court is left destitute of power to proceed with its business in case the sheriff may be disqualified by his interest in a suit.

The statute provides that each constable shall execute and return according to law all process, warrants and precepts to him directed by any lawful officer (Sayles' Rev. Civ. Stats., art. 4537), and he is subject to be fined for contempt if he fail or refuse to execute the same.

The statute also provides that the style of all writs and process shall be "The State of Texas," and unless otherwise specially provided by law, every such writ and process shall be directed to the sheriff or any constable of the proper county (Id. 1443), and for neglect or refusing to perform the duties required of him by the provisions of the law the constable is liable for contempt. Id. 1451.

We do not think the court acted without warrant of law in appointing the constable to execute the precept for summoning the talesmen required to complete the panel to try the case. The assigned error on this point can not be sustained.

And for like reasons the court did not err in refusing defendant's challenge to the array based upon the ground that nine jurors of the regular venire were summoned by the sheriff and fourteen others were

summoned as talesmen by the constable; nor should the court have granted a new trial because of the procedure complained of.

The rule as to evidence is that the plaintiff in a libel or slander suit may call as witnesses his friends or those acquainted with the circumstances to state that on reading the libel they at once concluded that it was aimed at the plaintiff. 13 Am. & Eng. Ency., Law, 393. This question was before this court in the case of Schulze v. Jalonick, decided November 25, 1896. The court did not violate the correct rule of evidence in admitting the testimony.

Appellant complains of the fourth paragraph of the court's charge, because it defines slander, and that issue was not raised, either by averment or proof.

The charge was harmless. It was not erroneous to define slander in the charge, the suit being for libel, as slander enters into the court's charge on libel.

The court defined libel as follows: "Libel is the printing and publication of any slanderous words of and concerning another or of his acts which is calculated to injure the reputation or character of the person spoken of or to disgrace him or bring him into disrepute with others, and to injure the feelings of the person spoken of."

The court also instructed the jury that the proprietors of a newspaper have the right to truthfully chronicle or to make a true statement of the acts and conduct of any person in their paper as an item of public news; but if they make an untruthful statement of the acts and conduct of any person in their paper which is calculated to injure the good name or character of the person spoken of or bring him into disgrace or disrepute with others, then such proprietors are liable in damages to the person to whom such statement refers, to the extent of the injury sustained.

We can not decide that the court's definition of libel was incorrect.

Libel has been defined to be "Everything printed or written which reflects on the character of another and is published without lawful justification or excuse, whatever the intention may have been. The words need not necessarily impute disgraceful conduct to the plaintiff; it is sufficient if they render him contemptible or ridiculous." Odger, Slander and Libel, 20.

The same author proceeds: "Any written words are defamatory which impute to plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice, or dishonorable conduct, or has been accused or suspected of any such conduct. * * * And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn, or ridicule, and which thus by engendering an evil opinion of him in the minds of right-thinking men tend to deprive him of friendly intercourse and society."

But any definition may not be entirely exact, so as to contain all that libel may include, and one author condemns all attempted definitions. Towns., Libel and Slander, 15 to 21, inclusive.

We believe any definition would be sufficient if it correctly state what would be libelous as applied to the facts in issue, without including everything libelous.

The court instructed the jury, substantially, that slander meant the speaking or uttering of any words in the hearing of others of and concerning another person or of his acts which is calculated to injure the character, reputation and good name of the person spoken of or to bring him into disrepute with others.

The definition of libel included what is slanderous and something more. It was not incorrect, but to have been a full and complete definition so as to include all defamatory publications it would have contained much more than it did.

Taking the whole charge and reading all of it in connection, we believe it was sufficiently comprehensive. If defendant were not satisfied with it it should have requested a fuller charge.

But, pretermitting all these questions, we think the court might have instructed the jury that the publication was libelous per se, as it accused plaintiff of a crime and also imputed to him misconduct and cruelty in office. The court should so inform the jury if the matter is libelous per se and unambiguous, as in this case. Cotulla v. Kerr, 74 Texas, 93.

The defendant requested the court to charge the jury that unless they believed the article, from its language, imputed to plaintiff the commission of some crime involving moral turpitude, it would be their duty to find for the defendant.

From what has been said in the foregoing it will be seen that this charge would have been erroneous. Charging one in print with the commission of a crime involving moral turpitude certainly would be libelous, but that would not include everything libelous per se involved in this case.

The appellant complains of the seventh paragraph of the court's charge, hereinbefore quoted, that "the proprietors of newspapers have the right to truthfully chronicle or make a true statement of the acts and conduct of any person," etc. If the charge contained error it was favorable to defendant, and it can not complain.

Appellant says the truth of the publication was not in issue. The plaintiff might complain in that case, but appellant can not.

The submission of the question of exemplary damages was eliminated from the case by the verdict, which was for $1000 actual damages only.

We can not say that it was erroneous for the court to have instructed the jury that if they believed that prior to January, 25, 1895—the time of the publication—the plaintiff enjoyed and possessed a good character for being an honorable, upright and humane man and officer, and that he had not theretofore been accused of any brutal conduct towards any person in the conduct of his office, and had not theretofore been accused of any offense against the law in the discharge of his office as sheriff, etc.,—thus permitting the jury to find good character for plaintiff, not-

withstanding there was no particular testimony as to the points mentioned in the charge.

Appellant contends that the submission of the matters mentioned was erroneous, because there was no evidence to base the charge upon.

The only testimony we find relating to plaintiff's character is given by the witness Thompson, who said: "I am well acquainted with Mr. Moulden, and he has been sheriff here a long time and is well known and highly respected."

In our opinion the charge can not be complained of by defendant, as the court might have instructed the jury that since there was no plea attacking the character of plaintiff and no evidence as to bad character in the particular traits mentioned, the law would presume that it was good. Instead of this he left the question to the jury. The defendant can not complain. The plaintiff can not in an action for libel defend his character as pleaded by him by evidence, unless it is attacked by plea or proof, because the law gives him a good character until it is impeached. Rearick v. Wilcox, 81 Ill., 77; Donney v. Dillon, 52 Ind., 442; Newell on Slander and Libel, pp. 883 and 884 et seq.

It has, however, been held in Connecticut that the plaintiff may prove good character under the general issue. Bennett v. Hyde, 6 Conn., 24.

It has been held that the defendant may, in mitigation of damages, prove bad character as to the traits involved under the general issue. Sayre v. Sayre, 25 N. J. (1 Dutch.), 235; Wolcott v. Hall, 6 Mass., 514, and 1 Pick (Mass.), 1; Birchfield v. Russell, 3 Coldw. (Tenn.), 228.

There was no error in the charge objected to of which appellant can complain.

The jury without proof of good character might properly estimate the damages that naturally resulted from the libelous publication against an officer innocent of the charge made in the publication. Such damages arise by inference of law, and need not be proved. Newell, Slander and Libel, 838-9; Rearick v. Wilcox, supra.

The fact that the court submitted to the jury whether or not the libelous matter was libelous and slanderous and that it was calculated to injure plaintiff in his reputation and feelings was not an error of which defendant can complain. He should have instructed the jury that the article was libelous in itself, and there being no issue as to its truth it was not necessary to submit that issue. The court should have instructed the jury that if the libel was published of and concerning plaintiff, as charged, they should find for him such actual damages as would compensate him for the injury, including injury to his feelings, if any. The question whether the article referred to plaintiff was submitted in the same clause of the charge. The converse of the proposition was also charged in favor of the defendant.

It was not error to refuse the charge requested by defendant that the article in evidence would not support an action for libel unaided by proof of actual damages as the result of the same. The court directed

the jury to find for plaintiff only nominal damages if plaintiff had suffered no actual damage to his character or feelings. The court submitted such issues as were required by the law.

The court instructed the jury that the burden of proof was upon plaintiff to establish his cause by a preponderance of evidence, and in case of failure to do so they should find for defendant; and in the same paragraph charged that if the plaintiff had failed to show by a preponderance of evidence that the article complained of and published pointed to and referred to him, they should find for the defendant.

It was not error to refuse a charge asked by the defendant to the same effect.

The court charged the jury that, "It is not necessary, in order to make an article libelous and slanderous, that the name of the person should be mentioned, provided such article refers to time, place and other circumstances with such certainty as to enable any person to know to whom the article had reference." This charge was as favorable to defendant as it could ask.

To determine the libelous character of the article as to plaintiff the jury could look to all the facts and circumstances in evidence relating to the incident published; and it was not necessary that the article, in itself or by itself, should so point to plaintiff as to inform any person that the same did mean and point to him. The charge requested on this point was correctly refused.

It was not error, upon the grounds assigned, to instruct the jury that in case they should find that plaintiff was entitled to recover they should take into consideration the character of plaintiff, previous to the time such article was published, as a man and an officer, and injury to the same, if any, and injury to his feelings. Appellant says the charge was erroneous, because it does not submit the proper measure of damages. Newell on Slander and Libel, 838-9. Injury to feelings is the subject of compensation when the libelous words are actionable in themselves, as in this case. Newell on Slander and Libel, 841; 58 Ill., 421.

We find no reversible error assigned on the trial below in the rulings, or charges given, or in refusing charges asked, or in other matters complained of. The testimony supports the verdict, and we can not say that it was excessive.

The judgment of the court below is affirmed.     *Affirmed.*

Writ of error refused.