Stanley B. MATTHEWS, Appellant,

v.

NEWSPAPERS INCORPORATED,
Appellee.

No. 10596.

Court of Civil Appeals of Texas.

Austin.

Oct. 15, 1958.

On Appellee's Motion for Rehearing
Dec. 17, 1958.

Further Rehearing Denied Jan. 7, 1959.

Tom H. Davis, L. Tonnett Byrd, Austin, for appellant.

Looney, Clark, Mathews, Thomas & Harris, Mary Joe Carroll, Austin, for appellee.

GRAY, Justice.

Stanley B. Matthews has appealed from a judgment denying him a recovery against Newspapers Incorporated. His suit was for damages allegedly sustained as the result of the publication of two newspaper articles.

At the times material here appellant was the owner of an automobile repair business located in the City of Austin and conducted under the name of the Texas Body Shop. The manager of the business was Darrell Cluck and Joe Rocha and Alex Hisbrook were employed as metal workers or laborers. Appellee was a corporation and published a morning newspaper under the name of the Austin American and an evening newspaper under the name of the Austin Statesman. Both newspapers were published and circulated in the City of Austin. On July 27, 1953 there was published in the Austin Statesman the following article:

"Automobile Wreckers Uncovered

"Racket Operated to Get Insurance

"A professional car wrecking ring was busted wide open here Monday by state highway patrolmen who have long suspected certain citizens of pushing their automobiles off cliffs in an effort to cash in on insurance claims.

"The car wreckers, it is said, will 'take care' of your car for $50.

"Many being in the wrecker and junk business, they're in a fine position to bid on the salvage and estimate the original value concerning insurance loss.

"Two Highway Patrolmen—O. E. Lusk and W. D. Wilson—uncovered the shady operation during the past week. They've been working on the case for several months, and Lusk said Monday that 'this is only the beginning.'

"Charges have been filed on two body shop operators in connection with the case. An examining trial is scheduled for 2 p. m. Tuesday in Justice of the Peace Frank McBee's Court.

" 'We have information regarding at least five more such incidents during the past few months,' said Lusk. 'It's something we've long suspected but haven't been able to prove. There'll be many more charges due in the near future.'

"The patrolmen got their big break last week when they were called in to investigate an 'accident' on the old Manor Road near the Walnut Creek Bridge.

"There they found a 1951 Plymouth almost totally demolished. 'All the physical facts and evidence pointed to the fact that the vehicle had been intionally wrecked,' said Lusk.

"The patrolmen talked to the car's owner who is stationed at Gary Air Force Base in San Marcos. Further questioning indicated he might not be telling the truth.

"Patrolmen said he underwent a polygraph test at the State Highway Department offices and subsequently broke down under questioning. Officers said he signed a confession stating he had entered into an agreement with the two body shop operators whereby they would wreck his car for $50.

"During the past two months there have been cases wherein cars have rolled down steep cliffs and the drivers escaped uninjured from the demolished vehicles. Other cars have slipped off embankments, and there were several instances where autos caught fire and burned.

"Patrolmen said they had been suspicious of a local body shop for some time. Even the manager's car had rolled off a cliff on the Marble Falls highway just last month. He was uninjured, but the automobile—a 1949 Packard—was a total loss.

"And still another case involved a Bergstrom airman's car in which the driver had left the vehicle to fix a flat tire. He explained that the vehicle rolled down a nearby cliff while he tried to change tires."

On July 28, 1953 there was published in the Austin American the following article:

"Highway Patrol Uncovers Professional Car-wrecking Ring

"A ring of professional car wreckers—who will guarantee to leave your vehicle in an advanced state of disrepair for a $50 fee—was uncovered in Austin Monday, State Highway Patrolmen said.

"The car wreckers who have been operating in this area, patrolmen said, have been pushing autos off cliffs, setting them on fire and otherwise destroying them to help the owners collect on their insurance claims.

"The two highway patrolmen who broke the case—O. E. Lusk and W. D. Wilson—said some of the wreckers have been 'fronted' by wrecker and body shops. By doing this, they pointed out, they were in a good position to estimate the wrecked car's original value for the insurance companies.

"Lusk said: 'This is only the beginning. We expect more arrests and plenty of confessions within the next few days. We've been on this for a long time.'

"Charges of conspiring with intent to swindle were filed in Justice of the Peace Frank McBee's Court last week on two Austin men in connection with the case. More charges are due this week, and an examining trial is due Tuesday at 2 p. m.

"Filed on in McBee's Court were Joe R. Rocha, and Alex Hisbrook, operators of the Texas Body Shop here.

"'We have plenty of information regarding at least five more such incidents over the past two months,' Lusk said.

"'It's something we've long suspected but haven't been able to prove.'

"The patrolmen believe they can prove their point now.

"The patrolmen last week became suspicious by the way a 1951 Plymouth had been demolished after a fall from a cliff. They questioned a Gary Air Force Base airman who broke down and made a confession, the patrolmen said.

"The patrolmen said a number of cars during the past few months have taken mysterious plunges off cliffs, into lakes, down embankments and into abutments. The drivers have always escaped uninjured."

Appellant alleged that the above articles were false and defamatory as to him and his business and caused damages to his business and to him individually. He prayed for judgment for his damages.

Appellee's answer consisted of special exceptions which were overruled, a general denial and defensive pleadings to the effect that the publications: were true; were fair and accurate reports of charges filed in a court of justice, and that appellant had failed to file an assumed name certificate under Art. 5924, Vernon's Ann.Civ.St., and Art. 1067, Vernon's Ann.P.C.

The cause proceeded to trial before a jury but at the conclusion of appellants' evidence the trial court granted appellee's motion for judgment and a judgment that appellant take nothing was entered.

It is appellee's position that appellant's pleadings cannot support a recovery of damages on any ground alleged and that the evidence failed to show a right to damages on the part of appellant. Appellee however, in oral argument, frankly admitted that appellant's business was damaged but denied liability therefor.

The evidence shows that Joe Rocha and Alex Hisbrook were former owners of the Texas Body Shop, operated the business under that name and employed Darrell Cluck as its manager. On May 25, 1953, appellant purchased the business from Rocha and Hisbrook and continued its operation under the name of the Texas Body Shop with Cluck as its manager and Rocha and Hisbrook as employees.

Witnesses testified that the publications caused them to quit doing business with the Texas Body Shop. The manager of a finance company in Austin testified that before the publications he purchased notes from appellant, that the Texas Body Shop did work on his company's repossessed automobiles and that after the publications his directors stopped him from doing any further such business. He testified that one director asked him if he read the papers and said that the business appellant was running was involved, that they had been wrecking automobiles, that he did not want the witness to have anything to do with them and that the paper that had been bought from appellant was worthless. This witness further said that after the publications he was criticized for associating with appellant. The manager of a claims service and adjusting firm representing sixty or seventy insurance companies testified that within a day or two after the publications the claims managers of several companies called about the publications and that "all of our men" were instructed not to use the Texas Body Shop any longer. He said:

"Q. Now, Mr. Cowan, can you tell us whether of not before these articles appeared that you and your company did business with the Texas Body Shop? A. Yes, sir, we did.

"Q. Did you do any business with them after these articles appeared? A. No, sir, we didn't."

Another insurance adjuster testified that he quit doing business with the Texas Body Shop because of the unfavorable publicity given the shop. The shop's workmen's compensation insurance was cancelled after the publications and because of them.

Appellant and his manager testified that after the publications the business of the Texas Body Shop decreased to the extent that only one job was repaired during the first month thereafter; that there just wasn't any business; that they would bring in automobiles with their wreckers and that others would come and pull them out and repair them.

Prior to the publications appellant's books showed a profit for the Texas Body Shop and afterwards a loss. Appellant finally changed the name of his business to Longhorn Body Works and moved to a new location.

There is no evidence that at the time of the publications either Joe Rocha or Alex Hisbrook were the operators of any body shop. They were employees of the Texas Body Shop but were not connected with it in any other capacity. These facts, we think, were circumstances that may or could have been used by persons acquainted with appellant and his business to identify the body shop mentioned in the publications.

There is no evidence that the Texas Body Shop or any wrecker and body shop was fronting the "wreckers" or in any manner connected with "a ring of professional car wreckers."

Joe Rocha owned a 1949 Packard automobile which rolled off of a cliff on the Marble Falls highway and was wrecked. He was not however the manager of the Texas Body Shop or any other shop but was connected with the Texas Body Shop as an employee only. There is no evidence that Darrell Cluck's, or the manager of any shop's, automobile was wrecked or that he ever owned a 1949 Packard.

One witness said that when he read the publications he understood that they referred to appellant and that in a discussion between himself and several other persons it was mentioned that appellant was involved in the activities referred to in the publications.

There is no evidence that appellant or his business was involved in the activities reported however he testified that the publications caused him to lose business friends, including insurance adjusters, that he lost their business and that lots of people "hated" him right after the publications. His testimony as to the extent of his loss of business has already been referred to.

Essentially the question presented is: Was the evidence sufficient to present an issue of fact as to either or both of appellant's allegations that the publications caused him to suffer damages to his business or individually? Appellee's defenses will be later noticed. Ordinarily it is a question of fact to be determined by the jury as to whether the libel was aimed at the plaintiff. Boone v. Herald News Co., 27 Tex.Civ.App. 546, 66 S.W. 313. However it is not necessary to make the published articles libelous that the plaintiff be named if the circumstances pointed him out.

" 'It is only necessary that the words refer to some person ascertainable from the words used.' It was not necessary that all the world should understand who the person defamed was. It is sufficient if those who know the plaintiff can discern that * * *' "

he was the person meant. Newell on Slander and Libel, p. 767. Quoted with approval in Warren v. Hill, Tex.Civ.App., 77 S.W.2d 322. In Red River Valley Publishing Co. v. Bridges, Tex.Civ.App., 254 S.W.2d 854, er. ref., n.r.e., the Court quoted, with approval, from Houston Printing Co. v. Moulden, 15 Tex.Civ.App. 574, 41 S.W. 381, 388, in part as follows:

"To determine the libelous * * * article as to plaintiff, the jury could look to all the facts and circumstances in evidence relating to the incident published; and it was not necessary that the article, in itself or by itself, should so point to plaintiff as to inform any person that the same did mean and point to him. * * * The rule as to evidence is that the plaintiff in a libel or slander suit may call as witnesses his friends, or those acquainted with the circumstances, to state that on reading the libel they at once concluded that it was aimed at the plaintiff."

The evidence above referred to was sufficient to present issues of fact as to whether the publications were directed at appel-

lant and his business. Even if it could be said that the publications purported to state charges made by patrolmen the above rule would not be changed unless such charges were true or appellee could support some other defense. 27 Tex.Jur. p. 618, Sec. 18.

■ As already stated the evidence does not establish the truth of the publications even though it be argued that an issue of fact as to that matter is presented. Further if it be argued that the statements that charges had been filed against Joe Rocha and Alex Hisbrook were the publication of official acts of the patrolmen which the patrolmen in their discretion were legally authorized to perform and therefore the publications were privileged under Art. 5432, Vernon's Ann.Civ.St., the question of privilege is not to be decided on that allegation because the publications did not stop there but went further and said other persons were involved. An enlightening discussion of privileged publications is made in Caller Times Pub. Co. v. Chandler, 134 Tex. 1, 130 S.W.2d 853. We hold that the two publications in their entirety do not come within the provisions of Art. 5432, Vernon's Ann.Civ.St.

■ Appellant had not filed an assumed name certificate under Art. 5924, supra. This fact however could not bar a recovery of damages by him. This statute was before the Court in Paragon Oil Syndicate v. Rhoades Drilling Co., 115 Tex. 149, 277 S.W. 1036, 1038, and the Court said:

"There is no express provision that in addition to this penalty (provided by Art. 1067 P.C. supra) the offender shall be denied the right to maintain suits in the courts of this state. The inhibition of the act of conducting a business in a prohibited manner does not evidence an intention to close the courts to those violating it and deny the right to maintain suits where the subject-matter is directly connected with the conduct of such business.

"The right to engage in business in an assumed name is a privilege the law of this state, prior to this enactment, has permitted. This act recognizes this right, and concedes the privilege. It, however, regulates the privilege of conducting business in an assumed name by requiring that the certificate be filed. It does not declare the use of the assumed name wrongful. It permits it."

■ We hold that appellant's failure to file an assumed name certificate does not bar his right to maintain this suit. It is also our opinion that the evidence was sufficient to present a jury question as to whether the publications were aimed at appellant and his business the Texas Body Shop. If this issue is resolved in favor of appellant then it becomes a jury question as to the amount of damages sustained by appellant to his business together with compensation for injuries to his character or reputation, mental suffering or anguish and other like wrongs and injuries incapable of money valuation if pleaded. West Texas Utilities Co. v. Wills, Tex. Civ.App., 164 S.W.2d 405.

Appellant of course would be entitled to recover only compensation for his injuries. Under the record here he seeks compensation for damage to his business and also to his reputation, etc. Under the above authority these are proper elements of recovery.

In view of another trial we pretermit a further discussion of the pleadings and facts. It is our opinion however that issues of fact were presented as above stated and that the trial court erred in granting appellee's motion for judgment.

The judgment of the trial court is reversed and this cause is remanded.

Reversed and remanded.

HUGHES, J., not sitting.

GRAY, Justice.

Appellee's motion for rehearing complains of our original opinion by twenty-three assignments. It contains six arguments which are to the effect that: our construction of the assumed name statutes was error; we misconstrued and in effect amended, by judicial construction, Art. 5430 by extending its provisions to injuries to a business; we failed to apply the rule "that the plaintiff must allege and prove facts from which it can be reasonably inferred that the plaintiff was the person intended to be libeled;" we failed to apply the rule that the language used should be given its plain and ordinary import and its effect should be ascertained from the impression it might create upon the minds of average, ordinary readers; we failed to recognize and apply the rule of substantial truths of the publications; we erred in holding that the language used in the publications is subject to innuendo construction and that we erred in failing to follow precedents which show that the publications constituted no basis of an action for libel.

What we said in our original opinion is sufficient to meet the above arguments in the case before us and we adhere to what we there said.

■ In this appeal our duty was to examine the evidence and determine whether issues of fact for a jury were presented. In doing so the evidence must be viewed in the light most favorable to the appellant (plaintiff below), conflicts in the evidence must be disregarded, and all intendments reasonably deducible from the evidence must be indulged in appellant's favor. 3–B Tex.Jur., p. 362, Sec. 908, and p. 444, Sec. 937. Applying these rules to the facts here we remain convinced that issues of fact were presented and appellee's motion for rehearing is overruled.

Motion overruled.

HUGHES, J., not sitting.