CALLER TIMES PUBLISHING COMPANY ET AL V. C. C. CHANDLER.

No. 7524.  Decided July 12, 1939.
Rehearing overruled October 11, 1939.
(130 S. W., 2d Series, 853.)

*John A. Mobley, Purl & Pearson* and *Kleberg, Eckhardt & Lowe,* all of Corpus Christi, for plaintiff in error.

It was error for the Court of Civil Appeals to hold that the publication of a newspaper of the contents of a confession taken by public officials in the course of investigations of crimes committed within their jurisdictions and taken in the manner and form prescribed by statute is not privileged under Article 5432, R. C. S., which provides that the publication of a fair, true and impartial account of the proceedings of a court of justice or any other official proceeding authorized by law in the administration of justice shall be deemed privileged. Belo & Co. v. Wren, 63 Texas 686; King v. Brown, 100 Texas 109, 94 S. W. 328; Tabor v. McKenzie, 49 S. W. (2d) 874.

*Gordon Gibson,* of Laredo, for defendant in error.

MR. JUDGE TAYLOR of the Commission of Appeals delivered the opinion for the Court.

The following is brought forward from the opinion of the Court of Civil Appeals as a part of the statement of the case: "Dr. C. C. Chandler brought this action for libel against Caller Times Publishing Company, a corporation, and W. G. Kinsolving, its editor and publisher, for actual and exemplary dam-

ages alleged to have been sustained by him on account of the publication of a series of news items in the Corpus Christi (morning) Caller and Corpus Christi (evening) Times, both owned by the corporation. Upon a peremptory instruction that portions of the publications were libelous per se, without regard to the truth thereof, and entitled Dr. Chandler to damage in 'some' amount, the jury found for him in the sum of $10,000 actual damages. The claim for exemplary damages was abandoned by the plaintiff in the course of the trial. Judgment was rendered in accordance with the verdict and the defendants below have appealed."

The Court of Civil Appeals reversed the judgment of the trial court in favor of plaintiff and remanded the cause, 122 S. W. (2d) 249. Writ of error was granted upon application of defendants, the publishing company and Kinsolving.

Typical among the published statements complained of are the following, which were published in the issue of the Times of November 9, 1933:

"Dr. C. C. Chandler, Corpus Christi dentist and former choir singer was arrested this morning on an indictment returned by the Nueces County Grand Jury charging him with conspiracy to rob the City National Bank shortly after the bank was closed. The case was taken before the grand jury for investigation after *Pat Gwynn,* defendant in the Speck's sandwich shop arson case *and another man,* former convict from the valley, *had made statements* telling of the alleged plan to rob the bank by gaining entrance through a pit under the elevator, and by the use of an acetylene torch.

*"According to the statement* made by Gwynn and the former convict, who also have been indicted in connection with the case, the plan was to secure the service of an acetylene torch man in Central Texas, recommended by the former convict as the best 'torch man' in Texas.

*"The men in their statement* declared to District Attorney Purl that the three, Chandler, Gwynn and the former convict, met at the elevator of the City National Bank Building, and that Dr. Chandler drew a diagram on a piece of paper showing how the bank could be entered from the pit under the elevator into the vault in the bank.

"After the entrance to the vault was effected, the safe was to be cut into with the acetylene torch and the safety deposit boxes were to be broken with a hammer, *they said.* In describing details of this part of the plan to officers, *Gwynn quoted*

*Chandler* as saying, 'I can break those safety boxes just like popping corn off the cob.'

"*According to the statements made by the men,* several meetings were held to perfect plans for the robbery.

"Chandler returned here from the north recently after having been exonerated in the fatal shooting of Calvin Howard, 27, of Rio, in a concession tent at the county fair in Connersville, Ind. *Officers said they found* he had been cleaning his gun when it was discharged accidently." (Italics ours.)

The foregoing statements, together with others of a similar nature, published in the Caller the following day, and others published on November 22nd and 23rd and in the Times on December 11th, respectively, were charged to be libelous as a matter of law. The court charged that the law presumed plaintiff suffered damage from such publications and instructed the jury to award compensation therefor in an amount to be determined by it.

The court in the language of the charge quoted below instructed the jury further that each of the incorporated statements was libelous, *unless found to be true*:

"The statement in the issue of the Times of November 9, 1933, to the effect that plaintiff was 'cleared recently in death of man'; and, to the effect that 'at the time the robbery was to take place * * * Gwynn was to be painting furniture in Dr. Chandler's office in the upper story of the bank building in order that the elevator might be kept off the ground floor. It is understood that the robbery is said to have been called off because one of the accomplices got cold feet.

"The statement in the issue of the Caller of the 21st day of December, 1933, to the effect 'that the trial of C. C. Chandler and others implicated in two indictments, one for conspiracy to burglarize the City National Bank, and another for arson, has been transferred to Cameron County on change of venue, Chandler is named with Pat Gwynn and another man, not yet arrested, in the arson case, and with Gwynn on the conspiracy charge.'

"The statement in the issue of the Caller of the 22nd day of December, 1933, to the effect that 'C. C. Chandler, Pat Gwynn, Pinkie Dorris and W. W. Stephens, are defendants in several cases, in which they were indicted variously on arson charges, and Gwynn and Chandler on a conspiracy to burglarize charge."

The major complaint of plaintiff in its final analysis, stated abstractly and as briefly as voluminous pleadings will permit,

is that defendants libeled him by publishing the contents of the confessions of persons other than himself, which implicated him in crimes for which he had been indicted, but which he alleges he was innocent of having committed.

The defenses, also voluminously pleaded, in addition to a general denial, are, briefly stated, (1) that the statements published were privileged, (2) that they were true, and (3) that the facts and circumstances surrounding the publications mitigated the damage, if any.

■ The instruction of the trial court that certain of the published statements complained of were libelous was tantamount to an instruction that there was no evidence to establish the truth of such statements, as well as an instruction that libel had been established as a matter of law. This instruction in the light of the holdings of the Court of Civil Appeals thereon, is made the basis of the first two questions presented by the application for the writ.

Upon the first question, to wit, whether there was probative evidence tending to establish the truth of the statements above referred to, the holding was that there was such evidence and that it "efficiently raised the issue that the statements were substantially true."

■ We are unable to say upon consideration of the record that there was *no evidence* of the truth of the statements in question, and for this reason leave undisturbed the holding of the Court of Civil Appeals that the trial court erred in withholding from the jury the issues raised with respect to the defense of truth.

The next question, presently to be stated, goes to the heart of the case. Plaintiff was indicted by a grand jury upon two charges, conspiracy to burglarize the vault of the defunct City National Bank of Corpus Christi, and a charge of arson. Both were largely founded upon confessions made before an assistant district attorney by one Cockrell, an ex-convict, and Pat Gwynn, a former tenant of plaintiff, and defendant in a then pending arson case. Both Gwynn and Cockrell were indicted jointly with plaintiff upon the charges against him. The defendants published not only the facts of the return of the indictments and the nature of the charges therein, and the fact that Gwynn and Cockrell had confessed, but also the contents of the confession, including the statements contained therein implicating plaintiff in the offenses charged, as appears from the published statements set out above.

The question arising upon the facts stated is whether the statements charged to be libelous per se, were privileged. Stated another way, and no more broadly than is necessary under the facts, are the contents of the confession of an alleged conspirator, or accomplice, of one indicted for crime, such a matter of privilege as that a newspaper may, prior to any action thereon by a court, publish its contents without liability therefor, as for libel, under the provisions of Art. 5432, R. S. 1925, as amended by the Act of 1927 (40th Leg. p. 121, ch. 80, sec. 2), 1938 Cumulative Pocket Part, Vol. 16, Vernon's Ann. R. C. S. Art. 5432, particularly subdivisions 1 and 4, which article as amended reads in part:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

'1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of same; * * * or *any other official proceedings, authorized by law in the administration of the law.* (Italics ours.) * * * *

'4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information * * *.' "

The Court of Civil Appeals held that the statements charged to be libelous as a matter of law were not privileged within the terms of the quoted statute, being purely ex parte, and not made in the course, or under the sanctity, of a judicial proceeding, citing, besides 27 Tex. Jur. p. 660, sec. 41, the case of Belo & Co. v. Wren, 63 Texas 686, in support of the holding. The writ was granted upon defendants' assignment of error in their application complaining of this holding.

■ Defendants invoke as authority for their defense that the publications were privileged, the italicised portion of subdivision 1 of the statute above quoted, stating in this connection that the whole question turns upon its construction. They contend in effect that the subdivision as a whole applies to two separate and distinct classifications of proceedings, one *judicial,* to which the first portion applies, and the other *official,* to which the second (the italicised portion) applies. Thus far we are in agreement with the view of defendants.

■ They urge further however that the taking of the confessions of Gwynn and Cockrell by the district attorney were "official proceedings" on his part within the purview of the language of the italicised portion of the above subdivision, since

such confessions, they contend, were taken by him in the performance of duties *made incumbent* upon him *by law* in that he was *authorized by law* to perform such duties, and that the publication of the contents of the confessions were therefore within the absolute privilege extended by the statute of newspapers. We overrule this contention.

The district attorney is not authorized by law to take confessions in the sense that such action is required of him by statutory mandate. Neither the function nor the effect of the provisions of Articles 726 and 727 of the Code of Criminal procedure, and Article 1157 of the Penal Code, quoted by defendants, is to *require* an official to take confessions from persons accused of crime, but the general purpose of such statute is regulatory in its nature, to the end that the rights of the persons confessing may be protected, and that the statements, when taken, may be admissible in evidence against the confessors.

■ The primary meaning of "authorize" is to empower, or give a right to act. Words & Phrases, 2nd. Ser. Vol. 1, p. 370, citing both Webster's Dictionary and the Century. While the right of the district attorney to take confessions is not questioned, the source of such right is not a legislative mandate. The Legislature has not specifically clothed him with authority to take confessions, which are after all but special statements that may or may not be received, or even offered, in evidence. While it is no doubt expedient that the prosecuting attorney take the statements of prospective witnesses upon occasions when in his judgment the interests of justice may be thereby subserved, just as it may be expedient for an attorney, not an official, to take a deposition, or even the confession of a witness. Certainly the law does not *require* of a prosecuting attorney as a part of his official duty that he take confessions.

■ It follows from what has just been stated that the case of Belo & Co. v. Lacy (wr. ref.), 111 S. W. 215, cited first by defendants, in which the publication there in question was held to be privileged, is not applicable as authority under the present facts. The holding, briefly stated, is that the publication by defendant of a copy of an entry made by a district clerk on his docket *"required by law to be entered on such docket"* (italics ours), was privileged by the terms of the provision of the statute under consideration. The court says:

"It is to be borne in mind that the principles on which privileged publication rests is that the published matter is authorized by law to become and be publicly known, because officially

done and under warrant of the law, and because of its *publicity theretofore given in the course of legal requirements.* * * * By the terms of this provision of the act in hand it would appear to be included, as privileged matter for publication by any newspaper, all such entries on the clerk's file docket of the district court, made by the clerk in the official discharge of his duties, as *required by law* to be entered on such docket." (Italics ours.)

It is apparent from the foregoing language of the opinion that the court by the use of the term "authorized" in another excerpt therefrom relied upon particularly by defendants, reading: " 'the phrase in the administration of the law' includes the performance of acts or duties *required* of officers * * * and all steps taken and all things done wherein legal procedure is *required* or *authorized,*" did not mean to hold that the privilege extended by the statute included all proceedings of an official which he *in his discretion* may perform in the discharge of his duties.

The opinion in Houston Chronicle Publishing Company v. McDavid (wr. ref.), 173 S. W. 467, states more aptly than does the opinion in the Belo-Lacy case a proper construction of the portion of the subdivision of the statute now being considered. The publication involved was an answer filed in a divorce suit, the contents of which were published before any judicial action had been taken thereon. Chief Justice Key speaking for the court in holding that the publication was not privileged, says:

"The last part of that subdivision of the statute extends the privilege to the publication of a fair, true, and impartial account of any other official proceedings authorized by law in the administration of the law; but we do not think that paragraph should be so construed as to authorize the publication of the *contents* of pleadings, when no action has been taken thereon by any officer. * * *. In the case at bar it is true that the answer to the divorce suit, which was the subject matter of the publication, had been filed by the clerk, but such filing was a mere ministerial act upon his part, and did not constitute a proceeding within the purview of the statute. There are many official acts performed when the court is not in session, and to which this portion of the statute would apply, such as the appointment of a receiver, the issuance of a writ of injunction, or a warrant of arrest, and many others which might be specified. But preparing a written pleading by the party or his attorney, and delivering the same to the clerk to be filed, is not an official

proceeding, and the file mark of the clerk does not render it such. If it be conceded that the act of the clerk in filing the paper is an official act, then the only privilege that would result therefrom would be the right to publish the fact that the pleading, giving its name as petition or answer, had been filed, *without the right to publish the contents thereof*." (Italics ours.)

It is stated in the annotation (A. L. R. Vol. 52, p. 1438) of one phase of the subject of privileged matters, that the Lacy case, supra, was overruled by the Houston Chronicle-McDavid case. It is not necessary to discuss to what extent, if any, the holding of the case is incorrect. It was not expressly overruled by the later case; but even if its holding is unmodified, it does not support defendants' contention that the publication of the contents of the confessions in the present case were privileged.

Nor is it necessary to discuss the construction of the statute as reflected in the quoted excerpt from the Houston Chronicle case, further than to say that for the same reasons as are there stated for holding the contents of the answer involved not within the privilege extended to newspapers by the provision of the statute in question, the contents of the confessions of Gwynn and Cockrell are not within such privilege. It is our view that the demands of public policy for the publication of the contents of the confessions of persons jointly indicted with another who does not join in such confessions, but who is thereby implicated with them in the offenses charged, do not outweigh the considerations requiring the protection of private reputation; and we so hold. It is not necessary that we here determine more broadly than this the scope and effect of the provision of the statute invoked. In questions of this character each case is largely determined by its peculiar facts, and there is no necessity for reviewing numerous other cases whose facts have a different setting. Express Publishing Co. v. Keeran (Com. App.) 284 S. W. 913; Belo & Co. v. Wren, supra. The holding stated is not made upon any principle in conflict with those stated in the Keeran case, nor in any of the other cases discussed in the application for the writ.

We approve the conclusion reached by the Court of Civil Appeals upon the question of privilege; also its holdings upon the other questions discussed in its opinion.

Its judgment reversing and remanding the cause for error on the part of the trial court in withholding from the jury the issues of truth, is correct, and is therefore affirmed.

Opinion adopted by the Supreme Court July 12, 1939.

Rehearing overruled October 11, 1939.