### BRINKLEY v. FISHBEIN.
#### No. 9230.

Circuit Court of Appeals, Fifth Circuit.
March 1, 1940.
Rehearing Denied April 19, 1940.

Will A. Morriss and Will A. Morriss, Jr., both of San Antonio, Tex., and Phil B. Foster, of Del Rio, Tex., for appellant.

W. L. Matthews and Clinton G. Brown, both of San Antonio, Tex., Grady Lowrey, of Del Rio, Tex., and Clement L. Harrell, of Chicago, Ill., for appellee.

Before FOSTER, HUTCHESON, and McCORD, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, John R. Brinkley, brought this suit to recover actual and punitive damages for libel, based upon the publication of an article in Hygeia, a monthly magazine published by the American Medical Association, of which defendant, Morris Fishbein, is the editor and the writer of the article. The article is one of a series being published entitled "Modern Medical Charlatans." Plaintiff declared upon certain excerpts from the publication which are as follows:

"Modern Medical Charlatans—John R. Brinkley.

"In John R. Brinkley, quackery reaches its apotheosis. He continues to demonstrate his astuteness in shaking shekels from the pockets of credulous Americans, notwithstanding the efforts of various governmental departments and agencies.

"When his radio station was removed he departed for Mexico, obtaining a license from the Mexican government. Now he broadcasts from Station XERA at Villa Acuna, Mexico, just across from Del Rio, Texas. All sorts of efforts have been made to remove him from the air but apparently without success. Right now he is not doing much in the way of goat gland transplanting. He reads the symptoms of patients and then by remote control prescribes the pill that they should use. You send him your dollar, and you get your pill. In addition, of course, he has a hospital in Del Rio where he performs some peculiar operations. The main one is the compound prostate operation for elderly gentlemen in which he merely injects a little mercurochrome into the tubes passing from the male sex glands. He has a high pressure man in his front office who makes sure that those who come to the hospital will have the money to pay in advance for the work. They are able to develop mortgages, loans and conversion of securities in order to permit the patient to pay on the nail for what he is going to get. Most of the business however, seems to come by way of the mail, and it is time for the Post Office Department to do something in regard to the use of the United States mails by John R. Brinkley in his defrauding of the public.

"The evidence assembled indicates that at various times, Brinkley has made as much as $55,000 a week from his various quackeries. He has been the possessor of three fine yachts. He travels abroad and returns to this country in the finest suits on the finest boats, accompanied by his family and the little boy's tutor. On the vessel going and coming neither he nor Mrs. Brinkley engage in conversation with the passengers. His name is too widely known for what he is to make him want to take the chance of what will happen when the passengers learn the names of their transatlantic acquaintance. Yet the money rolls in, which proves that the wages of sin is not always death."

Defendant pleaded the truth of the statements of fact in the article; that as to matters of opinion they are based upon

facts and are reasonable and honest opinions of defendant; and that the publication is privileged under the law of Texas.

■ The trial resulted in a verdict for defendant, upon which judgment was entered. The entire evidence is brought up in the record which consists of 1,164 printed pages. There are some thirty-two assignments of error. Twenty-four run to the admission or rejection of evidence and the others to parts of the general charge and to special charges given or denied. We are spared the necessity of discussing the assignments of error in detail and of reviewing the evidence. It is sufficient to say that the evidence of plaintiff, who was placed on the stand by defendant, tends to show the truth of the statements of fact complained of and we find no substantial evidence tending to show defendant was actuated by malice or that plaintiff suffered any actual damage compensatable in money.

■ The Texas Law of Libel is found in Arts. 5430 to 5433 of the Revised Civil Stats. of Texas, 1925, as amended by subsequent legislation, Vernon's Ann.Civ.St. art. 5430 et seq. Under the provisions of Art. 5431, Vernon's Ann.Civ.St. art. 5431, the truth of statements in publications shall be a defense for such actions though the words be actionable per se. Whelcss v. Davis & Son, Tex.Civ.App., 122 S.W. 929; Nunn v. Webster, Tex.Com.App., 260 S.W. 157.

There remains to be considered whether the expressions of opinion in the article are privileged. Art. 5432, as amended by the Acts of 1927, 40th Leg. Ch. 80, § 2, Vernon's Ann.Civ.St. art. 5432, provides inter alia: "The publication of the following matters by a newspaper or periodical shall be deemed privileged, and shall not be made the basis of any action for libel * *

"4. A reasonable and fair comment or criticism of * * matters of public concern published for general information."

The gist of the article complained of is the charge that plaintiff is a charlatan. A charlatan is defined as "one who pretends to more knowledge or skill than he possesses, especially in medicine; a quack." A quack is defined as "an ignorant or fraudulent pretender to medical skill" and an element of quackery is "to advertise or urge, as a quack does his remedies." See Century Dictionary, "charlatan" "quack."

The admissions of plaintiff in his testimony tend to show that he obtained his medical degree from an institution known as a diploma mill; that he had been practising medicine since 1915; that he began practising medicine in Milford, Kansas, in 1917; that he advertised, by pamphlets and newspapers and by radio broadcasting from his own station, an operation for transplanting goat glands in men for the purpose of sexual rejuvenation; that he had treated between 5,000 and 6,000 persons and he charged some of them nothing and some of them $750 for the operation; that his gross income was about $100,000 per month; that he abandoned this practice in 1933; that his license to practice medicine in Kansas was revoked in 1930 and his radio license was revoked by the Federal Communications Commission in 1930; that a license he had obtained to practice medicine in Connecticut was revoked; that he was indicted in California for a conspiracy to unlawfully practice medicine; that at the time the article was written he was advertising, by radio broadcasting from a Mexican station, his skill in treating prostatic troubles; that he would prescribe by letter for persons who wrote to him describing their symptoms, for which he charged $2.

All learned professions have their standards of ethics. A lawyer who advertises and gives advice by mail without seeing his client would certainly be considered a shyster. There is no doubt whatever that plaintiff by his methods violated accepted standards of medical ethics.

■ We think above stated facts are sufficient to support a reasonable and honest opinion that plaintiff should be considered a charlatan and quack in the ordinary, well-understood meaning of those words. We conclude this was a matter of public concern and the articles were published for general information. Therefore, the publication was privileged. The following authorities support these conclusions: Morin v. Houston Press Co., Tex.Civ.App., 103 S.W.2d 1087; Express Pub. Co. v. Keeran, Tex.Com.App., 284 S.W. 913; Hunter v. Sharpe, XV Law Times Rep. N.W. 421.

■ Plaintiff makes the point that the suit is against the author of the article and not against the magazine Hygeia and the privilege is not extended to him. The contention is untenable. It is elementary that libel results from publication of a defamatory statement and not from the mere writing of it.

The record presents no reversible error. The judgment is affirmed.