Tom M. BELL et al., Plaintiffs,

v.

Ed GAYLE et al., Defendants.

Civ. A. No. CA-5-74-4.

United States District Court,
N. D. Texas,
Lubbock Division.

Nov. 18, 1974.

Buford C. Terrell, Lubbock, Tex., for plaintiffs.

Paul New, Denver City, Tex., for defendants.

## MEMORANDUM OPINION

WOODWARD, District Judge.

The three plaintiffs were formerly employees of the police department of the City of Denver City, Texas. The defendants are the mayor and four other members of a six-member city council of the City of Denver City, Texas.

Plaintiffs allege that the defendants have deprived plaintiffs of their civil rights and due process of law and ask for relief and damages under 42 U.S.C. § 1983 and further ask this court to take pendent jurisdiction of their common law action of defamation of character because of the acts of the defendants toward the plaintiffs. This court has jurisdiction under 28 U.S.C. § 1331.

It is intended that this memorandum opinion shall constitute the court's Findings of Fact and Conclusions of Law.

Each of the plaintiffs were employed by Denver City, Texas as a member of its police department and were so employed during all of the times relevant to the issues in this case. Each of the plaintiffs had prior experience with other law enforcement agencies before being employed by Denver City. Plaintiffs had been employed by Denver City for various periods of time. Mr. Chumley had been there for several years, Mr. Renfro had been employed for just about one month prior to his termination, and Mr. Bell had been in such employment by Denver City for over a year.

Each of the plaintiffs, in addition to their employment as members of the city police force, were employed on a part-time basis by a Dr. Kolnick, a resident and practicing physician in Denver City, Texas. While in such part-time employment Mr. Bell received $200.00 per month, Mr. Renfro received $500.00 per month for the operation of a service station on behalf of Dr. Kolnick, and Mr. Chumley received approximately $800.00 for the twelve days that he was employed by Dr. Kolnick just prior to the events in question here.

It appears from the record in this case that Dr. Kolnick was reported to have made threats on the lives of two other doctors practicing in Denver City. As a result of these threats the sheriff of the county deputized several citizens to guard the residences of the two threatened doctors, and this was done for a period of time on or about the events in question in this case. While the citizens were being deputized by the sheriff of the county for these purposes the plaintiffs in this case, who were police officers of Denver City, Texas, were in the part-time employment of Dr. Kolnick.

Feeling that such part-time employment, especially with Dr. Kolnick, was in conflict with their duties as members of the city police force, the mayor and at least one or two other members of the city council met sometime late at night on either September 7th or 8th, 1973

with each of the three plaintiffs. The sum and substance and result of these meetings was that the plaintiffs were each told that they were to choose between giving up their part-time employment with Dr. Kolnick or giving up their employment with the city, and it seemed to be understood by all parties that if they desired to keep the part-time employment they could no longer be members of the police force in Denver City. On the same day a later meeting was held at about dark in which the three plaintiffs were asked what their decision was, and all three told the mayor and two councilmen who were present, with the chief of police, that they would not make the decision but would let the council make the decision themselves. No determination or decision was made at this second meeting.

It further appears that the two meetings above referred to were not called as special meetings of the city council nor was any notice of the meeting given nor any minutes of these meetings kept.

The following week, on Thursday, September 13, 1973, a special called meeting of the city council was held and all of the members of the city council were present except Mr. Trent who is not a party to this suit. The plaintiffs were not given advance notice of the meeting although the chief of police during the meeting sent word for them to come to the city hall. This they did, but were not invited into the council room nor did they attend the meeting but instead waited outside the council door. The meeting lasted approximately thirty minutes and at its termination the chief of police and at least one other member of the council informed two of the plaintiffs, Mr. Bell and Mr. Renfro, that they "had been terminated" and that "the decision had been made for them," and that they were "cut loose." Mr. Chumley was not at this meeting because he was ill.

From the evidence in this case the court finds that there was a definite conflict of interest between the duties of the plaintiffs as members of the police force and their part-time employment with Dr. Kolnick. He undoubtedly used at least one or more of the plaintiffs and, thereby, city police cars for his own personal business during the time that they were on duty. These incidents, although insignificant when viewed separately, become very serious when viewed with respect to alleged threats on the lives of two other doctors by Dr. Kolnick. It became the duty of the plaintiffs as police officers to protect such doctors, presenting a potential conflict of loyalties between that loyalty that might be to Dr. Kolnick under their part-time employment and the loyalty owed the city as its police officers.

■■ This conflict of interest was sufficient to require the city council to demand that the plaintiffs make a choice between the two jobs. Failure by the city council to have taken such action would have amounted to dereliction of duty on its part. Even though it was known and even approved by the city council that the plaintiffs had part-time jobs, this approval and knowledge did not extend to the approval of holding part-time jobs when such jobs presented a conflict of interest with their duties as policemen. When this conflict became apparent as it did in this case, the demand for making the choice above mentioned was justified.

■ But even then, and assuming that there were valid reasons for discharging the plaintiffs had they refused to give up their job with Dr. Kolnick, the plaintiffs are required to have been given due notice and an opportunity to be heard in their defense. Article 1006, Vernon's Annotated Texas Statutes, clearly provides that an officer may be removed for incompetency, corruption, misconducts, or malfeasance, only after due notice and an opportunity to be heard in his defense.

■■ This court finds that such notice and opportunity was not afforded

the plaintiffs in this case. Although the meetings on Saturday (or Sunday as the case may be) were for the purpose of notifying the plaintiffs of the problem that existed and advising them of the wishes of the city council, no meaningful hearing was given nor was any meaningful opportunity afforded the plaintiffs to present their position or reasons why they should not be required to make a choice as to jobs when it was well known that they had part-time jobs and, in fact, it was apparent that it was necessary that they have such outside employment to supplement the salaries received from the city. What the defenses of the plaintiffs would have been had there been an opportunity to present same is unknown to this court, but it is not the function of this court to pass on this particular matter. The question here is whether or not the plaintiffs were deprived of due process of law by the failure of the city council to follow Article 1006. This court finds and concludes that the defendants in this case acting under color of law by virtue of their offices on the city council and as mayor of Denver City, Texas, deprived the plaintiffs of their right to due notice and an opportunity to present defenses. The facts in this case do not show that sufficient notice was given nor was there any opportunity given for presentation of a defense.

 State laws, rules or understandings that secure certain rights and benefits provide a sufficient interest to the individual to require constitutional protection against the deprivation of such rights and benefits without due process of law. Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2513, 33 L.Ed.2d 570 (1972). Therefore, the plaintiffs had proved to the satisfaction of this court by a preponderance of the evidence that they were deprived of a right or benefit conferred by state law without due process of law and are entitled to a recovery under 42 U.S.C. § 1983.

The mayor testified that had any one of the plaintiffs told the city council they would give up their part-time job with Dr. Kolnick, they would have been continued in their employment with the city. But the opportunity to present this position was not afforded on September 13, 1973, when the plaintiffs were discharged, although it was apparent from the last meeting on Saturday that they would not voluntarily make the choice themselves but would leave it to the council.

The court determines that if a hearing had been afforded and due notice been given to the plaintiffs, the council would have had reasonable grounds to discharge plaintiffs Tom Bell and C. A. Renfro, and would have done so. Therefore, if a hearing had been afforded, the result as to plaintiffs Tom Bell and C. A. Renfro would have been the same. However, the evidence shows that plaintiff Hugh Chumley had expressed a desire to end his employment with Dr. Kolnick prior to the council meeting of September 13, 1973. Therefore, as to this plaintiff, there might have been a different result if a hearing had been afforded.

 The question of damages is difficult to determine in this case. Mr. Bell and Mr. Renfro were making $575.-00 a month and Mr. Chumley was making $582.00 a month as patrolmen. The court finds that under the evidence introduced, each of the plaintiffs made more money, after their termination, either in the continued employment with Dr. Kolnick or other employment secured elsewhere. Therefore, no actual damages based on any decrease in earnings after their discharge may be awarded to plaintiffs. However, a citizen's constitutional rights are of such a value that nominal damages are presumed to flow from the deprivation of such rights. Sexton v. Gibbs, (N.D. Tex.1970), 327 F.Supp. 134, aff'd, C.A. 5th, 446 F.2d 904, cert. denied, 404 U.S. 1062, 92 S.Ct. 733, 30 L.Ed.2d 751

(1972). Therefore, nominal damages of $1.00 each are assessed against the defendants, jointly and severally, in favor of the plaintiff, Tom M. Bell, and in favor of the plaintiff, C. A. Renfro. Further, it appears to the court that nominal damages would not be the appropriate remedy insofar as the plaintiff, Hugh M. Chumley, is concerned in view of his expressed desire to remain with the police force and give up his part-time job, and therefore the court awards the plaintiff, Hugh M. Chumley, damages in the sum of $582.00 against the defendants, jointly and severally.

The court does not find any malice or other actions or acts on the part of any of the defendants that would constitute grounds for the award of exemplary damages and such exemplary damages are denied.

The court finds $500.00 to be a reasonable attorney's fee for the one-day trial of this case. Therefore, the court awards $500.00 attorney's fee to the attorney for the plaintiffs.

There has been no defamation of character here to sustain any common law action. The newspaper article entered in this case stated that the plaintiffs were released "for letting outside activities interfere with police duties and on failure to perform police duties while on city time." The court finds that this was the true reason for the discharge and that this reason had a truthful basis. There can be no defamation of character when only the truth is spoken and no relief can be awarded plaintiffs on this ground. Caller Times Pub. Co. v. Chandler, 122 S.W.2d 249 (Tex.Civ.App., 1938), aff'd, 134 Tex. 1, 130 S.W.2d 853 (1939); Brinkley v. Fishbein, 110 F.2d 62 (5th Cir. 1940), cert. denied, 311 U.S. 672, 61 S.Ct. 34, 85 L.Ed. 432 (1940).

Judgment will be entered accordingly and all costs taxed against the defendants.