# NO. 12-22-00044-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *STEVEN MONACELLI AND THE DALLAS WEEKLY, INC., APPELLANTS* | § | *APPEAL FROM THE 173RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *MONTGOMERY J. BENNETT AND DALLAS EXPRESS MEDIA, INC. D/B/A THE DALLAS EXPRESS, APPELLEES* | § | *HENDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

In this accelerated interlocutory appeal, Appellants Steven Monacelli and *The Dallas Weekly, Inc.*[1] challenge the trial court's order denying their motion to dismiss pursuant to the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003 (West 2020), 51.014(12) (West Supp. 2021). In five issues, Appellants argue that (1) the trial court erred by denying their motion to dismiss, (2) Appellees failed to establish by clear and specific evidence a prima facie case of each element of their claim, (3) Appellants satisfied their burden to establish a defense or affirmative defense as a matter of law, (4) the trial court abused its discretion by failing to exclude Appellees' affidavits, and (5) Appellants are entitled to costs, attorney's fees, and sanctions. We reverse and render in part and reverse and remand in part.

## BACKGROUND

Appellee, Montgomery J. Bennett, is a businessman in the hospitality industry and a supporter of conservative political causes and candidates in Texas. Articles favorable to Bennett

---

[1] We will refer to Appellants collectively as "Appellants" and individually as "Monacelli" and "*Dallas Weekly*," respectively. We will refer to Appellees collectively as "Appellees" and individually as "Bennett" & "*Dallas Express*," respectively.

and his companies were published in *Dallas City Wire*, which is published by Metric Media. An October 2020 article entitled "As Local News Dies, a Pay-for-Play Network Rises in Its Place" in *The New York Times* reported that Bennett used "pay-for-play" websites to advocate for government stimulus funds for the hotel industry during the COVID-19 pandemic. On February 8, 2021, Bennett announced that he was launching *The Dallas Express* as a non-profit local news source that would present news about Dallas "straight down the center."

Monacelli authored, and *Dallas Weekly* published, an article entitled "Formerly Black Owned Dallas Express Resurrected As Right Wing Propaganda Site." The full article, which was published on February 12, 2021, read as follows:

Between 1892 and 1970, the *Dallas Express* was a Black newspaper in Dallas, perhaps the largest and most influential during its existence. It notably publicized lynchings, attacked racial segregation and promoted issues like public housing. Now, the name is being used to publish right-wing propaganda funded by a wealthy Texas Republican donor, Monty Bennett. This is but the latest resurrection of *Dallas Express* as a fake news site. Prior to Bennett's takeover, *Dallas Express* was described by D Magazine as a pay-to-play "news" site run by a Chicago-based operation called Metric Media News that owns hundreds of such bogus news sites all across the country, which are known in the industry as "pink slime." Bennett himself was previously accused by D Magazine and the New York Times of utilizing these websites for PR, an allegation which Bennett disputed – ironically, on a pay-to-play website, *Dallas City Wire*.

Just two weeks after *Dallas Express* was identified as being a part of the same "pink slime" network as *Dallas City Wire*, Bennett announced the creation of the newly resurrected *Dallas Express* on February 8, presenting the new outlet as a "strictly objective" antidote to what he sees as biased news media. "I can't take it anymore – and I know many of you can't either. The *Dallas Express* was created for one purpose[:] to help make our city a better place. That's it. It's a non-profit operation and there's no other agenda," Bennett writes.

Yet a review of the stated "core beliefs" of the paper reveals a rather clear agenda, or at the very least, a set of biases that cannot be considered "objective." Take for example the statement that "regulations undermine individual and business productivity, and should not exist unless there is evidence they serve a public interest more important than liberty and productivity." Other statements express disdain for programs that foster "dependency" (read: welfare) and characterize taxes as "generally oppressive." These are obviously conservative positions.

Bennett is also a board member of Texans for Education Reform, a group which has been bankrolled by the likes of the Hunt family, who are known for their billions in oil wealth as well as their donations to conservative politics. It's not clear that the Hunts fund *Dallas Express* – which is ostensibly formed as a nonprofit – but it would not be out of character for the family, considering their late scion, H.L. Hunt, funded his own right-wing propaganda network called the Life Line Foundation, Inc.

It's also not clear whether they actually have any local reporters. Most of the names associated with recent articles reveal writers who are based in other states. But what is clear is that the recently resurrected *Dallas Express* is just the latest iteration of a sort of local "news" publication that is funded by wealthy individuals with clear political agendas. And certainly, a far cry from the historical legacy of the original *Dallas Express*.

A call placed [to] the number on the *Dallas Express* website went to voicemail and has not been returned. [hyperlink to D Magazine article]

The parties agree that *D Magazine* subsequently modified its article by removing the statements "pay-to-play" and "fake news" that appeared in the original version. After *D Magazine* modified its article, Appellants removed the "pay to play" and "fake news" statements from their article, but the "right-wing propaganda" statements remained. Appellants also changed "described by *D Magazine*" to "reported by *D Magazine*."

*Dallas Express* and Bennett filed suit against Monacelli and *Dallas Weekly* in Henderson County, Texas,[2] asserting claims for libel and libel per se. Appellees contended that the statements in Monacelli's article that *Dallas Express* is a "right wing propaganda site" and that characterize *Dallas Express* prior to Bennett's takeover as "fake news" and a "pay-to-play 'news' site" that was once "run by a Chicago-based operation called Metric Media" that "owns hundreds of bogus news sites all across the country" are defamatory. Appellees also alleged that the statements were published with actual malice because they were made "with reckless disregard for whether they were false and specifically intended to substantially injure or harm [Appellees]." In their answer, Monacelli and *Dallas Weekly* entered a general denial and alleged, among other affirmative defenses, that the challenged statements are "accurate reports of allegations made by third parties regarding matters of public concern under Texas Civil Practice & Remedies Code § 73.005(b)" and are "expressions of opinion and other statements that are not assertions of fact and are not actionable."

Appellants moved to dismiss Appellees' claims against them pursuant to the TCPA. In their TCPA motion, Appellants argued that (1) the TCPA applies because Appellees' claims are based upon Appellants' exercise of the right of free speech; (2) Appellees cannot establish by clear and convincing evidence a prima facie case for each essential element of their claims because the statements at issue are opinion or rhetorical hyperbole and not objectively verifiable, based on statements that are "literally or substantially true, and are "privileged as fair and reasonable comment on matters of public concern[,]" and (3) Appellants are entitled to costs, attorney's fees, and expenses. Appellants also sought sanctions, contending that the case "is clearly designed to chill reporting on the controversies surrounding [Appellees]." Appellees filed a response, in which they alleged that they established a prima facie case for each element of their claims, the statements

---

[2] In his petition, Bennett asserted that he is a resident of both Dallas County and Henderson County, and he contended that he was a resident of Henderson County when the cause of action accrued. Appellees did not challenge venue.

at issue are not constitutionally protected opinions, and Appellants did not establish any affirmative defense as a matter of law.[3]

After conducting a hearing, the trial judge denied Appellants' TCPA motion.[4] This appeal followed.

## MOTION TO DISMISS PURSUANT TO THE TCPA

In issue one, Appellants argue that the trial court erred by denying their motion to dismiss, and in issue three, Appellants contend that they established defenses or affirmative defenses as a matter of law. Because these issues are intertwined and dispositive, we will address them together.

### Standard of Review and Applicable Law

We review a trial court's ruling on a TCPA motion to dismiss de novo. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019); *Kassab v. Pohl*, 612 S.W.3d 571, 577 (Tex. App.—Houston [1st Dist.] 2020, pet. denied). Under the de novo standard, we make an independent determination and apply the same standard the trial court used in the first instance. *Fawcett v. Grosu*, 498 S.W.3d 650, 656 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). We view the evidence in the light most favorable to the nonmovant. *Dolcefino v. Cypress Creek EMS*, 540 S.W.3d 194, 199 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

"One of the foundational principles of American democracy is the freedom to comment on matters of public concern." *D Magazine Partners, L.P. v. Rosenthal*, 529 S.W.3d 429, 433 (Tex. 2017). The purpose of the TCPA "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002 (West 2020). Although we construe the TCPA liberally "to effectuate its purpose and intent fully[,]" it "does not abrogate or lessen any other defense, remedy, immunity, or privilege available

---

[3] Bennett asserted in his response to the motion to dismiss that he was "targeted" by Appellants "because of his marriage to a Hispanic woman." Bennett also stated in his response that it is his "belief and experience that far-left ideologues are discriminatory and outright racist to (usually conservative) white males that intermarry with Black or Hispanic women."

[4] The judge of the 173rd District Court of Henderson County, the Honorable Dan Moore, recused himself, and the case was assigned to the Honorable Scott Williams, Judge of the Henderson County Court at Law.

under other constitutional, statutory, case or common law or rule provisions." *Id*. § 27.011(a) (West 2020).

To fulfill its stated purpose, the TCPA provides a mechanism for early dismissal of a cause of action to which it applies, such as one that is based on, relates to, or is in response to a party's exercise of the right of free speech. *Id*. § 27.003 (West 2020); *see **Baylor Scott & White v. Project Rose MSO, LLC***, 633 S.W.3d 263, 275 (Tex. App.—Tyler 2021, pet. denied). The TCPA's early dismissal procedure is intended "to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits." ***In re Lipsky***, 460 S.W.3d 579, 589 (Tex. 2015). The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(3) (West 2020). A "matter of public concern" includes a statement regarding (1) a public figure or other person "who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;" (2) an issue related to "political, social, or other interest to the community;" or (3) "a subject of concern to the public." *Id*. § 27.001(7); *see **Snyder v. Phelps***, 562 U.S. 443, 453, 131 S. Ct. 1207, 1216, 179 L. Ed. 2d 172 (2011).

Courts review TCPA motions to dismiss using a three-step analysis. ***Youngkin v. Hines***, 546 S.W.3d 675, 679 (Tex. 2018). First, the movant must establish that the TCPA applies. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a) (West 2020), 27.005(b) (West Supp. 2021). If the movant satisfies that threshold requirement, the burden shifts to the non-movant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id*. § 27.005(c). Lastly, even if the nonmovant establishes a prima facie case, the trial court shall dismiss the legal action if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law. *Id*. § 27.005(d). In determining whether a legal action should be dismissed under the TCPA, "the court shall consider the pleadings, evidence a court could consider under Rule 166a, Texas Rules of Civil Procedure, and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id*. § 27.006 (West 2020).

## Analysis

"All assertions of opinion are protected by the [F]irst [A]mendment of the United States Constitution and article 1, section 8 of the Texas Constitution." ***Carr v. Brasher***, 776 S.W.2d 567, 570 (Tex. 1989). Because assertions of opinion are protected by the First Amendment, "to be

actionable, a statement must assert an objectively verifiable fact rather than an opinion." ***Johnson v. Phillips***, 526 S.W.3d 529, 535 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also **Howell v. Hecht***, 821 S.W.2d 627, 631 (Tex. App.—Dallas 1991, writ denied).

"Speech concerning matters of public interest is protected by the First and Fourteenth Amendments to the United States Constitution, Article 1, Section 8 of the Texas Constitution, and Chapter 73 of the Texas Civil Practice and Remedies Code." ***Williams v. Cordillera Commc'ns, Inc.***, 26 F. Supp. 3d 624, 633 (S.D. Tex. 2014). Section 73.005 of the Texas Civil Practice and Remedies Code provides as follows:

> (a) The truth of a statement in the publication on which an action for libel is based is a defense to the action.
> (b) In an action brought against a newspaper or other periodical or broadcaster, the defense described by Subsection (a) applies to an accurate reporting of allegations made by a third party regarding a matter of public concern.

TEX. CIV. PRAC. & REM. CODE ANN. § 73.005(a), (b) (West 2017). Under Section 73.005, "media outlets that accurately report allegations made by a third party about matters of public concern can assert the truth as a defense." ***Hall***, 579 S.W.3d at 380; *see also **Brinkley v. Fishbein***, 110 F.2d 62, 64 (5th Cir. 1940). Moreover, Section 73.002 of the Texas Civil Practice and Remedies Code provides that publication by a newspaper or other periodical is privileged and not a ground for a libel action if it consisted of reasonable and fair comment on a "matter of public concern published for general information." TEX. CIV. PRAC. & REM CODE ANN. § 73.002 (West 2017). The fair comment privilege protects defendants in a libel suit stemming from publication of articles on matters of public concern published for general information; however, the privilege does not extend to false statements of fact. ***Neely v. Wilson***, 418 S.W.3d 52, 70 (Tex. 2013).

The statements Appellees assert are defamatory are the ones regarding "right-wing propaganda," "fake news," and "pay-to-play." Appellees did not dispute that the TCPA applies. Therefore, the burden shifted to Appellees to establish by clear and specific evidence a prima facie case for each essential element of their claims. *See* TEX. CIV. PRAC. & REM CODE ANN. § 27.005(c). Because, as explained herein, we ultimately conclude that Appellants established defenses as a matter of law regarding the challenged statements, we need not address this step in the TCPA analysis. *See **Youngkin***, 546 S.W.3d at 681; ***In re Estate of L.R.M.***, No. 13-19-00598-CV, 2021 WL 5365097, at *3 (Tex. App.—Corpus Christi Nov. 18, 2021, no pet.) (mem. op.);

*Sinkin & Barretto, P.L.L.C. v. Cohesion Props., Ltd.*, No. 04-20-00106-CV, 2021 WL 1649525, at \*5 (Tex. App.—San Antonio Apr. 28, 2021, no pet.) (mem. op.); *Choctaw Constr. Servs. LLC v. Rail-Life R.R. Servs., LLC*, 617 S.W.3d 143, 151 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (all assuming without deciding that appellee met the burden of establishing a prima facie case under the TCPA and proceeding to determine whether appellant established affirmative defense).

Monacelli's article reported, with attribution to the source (*D Magazine*), the "pay-to-play" and "fake news" statements regarding Appellees. Therefore, we must determine whether the challenged statements were about matters of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.005(b). In deciding whether speech is of public concern, we must examine the content, form, and context of that speech, as revealed by the entire record. *Snyder*, 562 U.S. at 453, 131 S. Ct. at 1216. A statement that is allegedly defamatory must be examined within its context and in light of the surrounding circumstances. *See Olivia v. Davilla*, 373 S.W.3d 94, 103-04 (Tex. App.— San Antonio 2011, pet. denied). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Snyder*, 562 U.S. at 454, 131 S. Ct. at 1216. We conclude that the source of, motivation for, and editorial integrity of news outlets, on which Monacelli's article reports and raises questions regarding Bennett and *Dallas Express*, involve political and social issues and, therefore, are legitimate matters of public concern. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001(7) (defining "public concern"), § 73.005(b) (providing that the truth defense applies to "accurate reporting of allegations made by a third party regarding a matter of public concern"); *see Snyder*, 562 U.S. at 453-54, 131 S. Ct. at 1216. Therefore, we further conclude that the defense provided by Section 73.005(b) protects Appellants' publication of the "pay-to-play" and "fake news" statements, which were contained in the original *D Magazine* article. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.005(b).

We now turn to the "right-wing propaganda" statement. As discussed above, assertions of opinion are constitutionally protected. *Carr*, 776 S.W.2d at 570. This protection is also reflected in Section 73.002 of the Texas Civil Practice & Remedies Code, which provides that the publication of statements that constitute "reasonable and fair comment or criticism of" a "matter of public concern published for general information[]" is privileged and therefore not a ground for a libel action. TEX. CIV. PRAC. & REM. CODE ANN. § 73.002(a), (b)(2). Appellees argue that the "right-wing propaganda" statement is objectively false rather than a non-actionable opinion

because the facts upon which it is based are false. We disagree. Merriam-Webster's Collegiate Dictionary defines "propaganda" as "the spreading of ideas, information, or rumor for the purpose of helping or injuring an institution, a cause, or a person," or "ideas, facts, or allegations spread deliberately to further one's cause or to damage an opposing cause[.]" MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 996 (11th ed. 2011). We conclude that, when viewed in the context of the entire article in which it appears, the "right-wing propaganda" statement is clearly Monacelli's opinion regarding the likely editorial viewpoint, direction, and potential bias of *Dallas Express* and Bennett. Because such matters are of public concern, we conclude that Appellants established as a matter of law that the "right-wing propaganda" statement is a protected opinion. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.002(b)(2); ***Carr***, 776 S.W.2d at 570.

Because Appellants established defenses as a matter of law, the trial court erred by denying Appellants' TCPA motion to dismiss. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(d). Accordingly, we sustain issues one and three and render judgment dismissing Appellees' claims. We need not address issues two and four, as they would not result in greater relief. *See* TEX. R. APP. P. 47.1.

### ATTORNEY'S FEES, COSTS, AND SANCTIONS

In issue five, Appellants contend that they are entitled to attorney's fees, costs, and sanctions. The TCPA provides that a party who prevails on a motion to dismiss shall be awarded costs and reasonable attorney's fees and may be awarded sanctions "as the trial court determines sufficient to deter the party who brought the legal action from bringing similar actions[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 27.009(a) (West 2020). Because we render judgment granting Appellants' motion to dismiss, as the trial court should have done, we sustain issue five and remand the cause to the trial court for further proceedings, as explained below.

### DISPOSITION

Having sustained issues one, three, and five, we ***reverse*** the trial court's order denying Appellants' motion to dismiss, ***render*** judgment dismissing Appellees' claims against them, and ***remand*** the case for a determination of attorney's fees and costs, as well as a determination of whether an award of sanctions is appropriate and, if so, in what amount. *See **id**.; see also* TEX. R.

8

APP. P. 43.3(a) (providing that Court of Appeals must render the judgment the trial court should have rendered except when a remand is necessary for further proceedings).

**GREG NEELEY**
Justice

Opinion delivered August 30, 2022.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**AUGUST 30, 2022**

**NO. 12-22-00044-CV**

**STEVEN MONACELLI AND THE DALLAS WEEKLY, INC.,**
Appellants
V.
**MONTGOMERY J. BENNETT AND DALLAS EXPRESS MEDIA, INC. D/B/A THE DALLAS EXPRESS,**
Appellees

Appeal from the 173rd District Court

of Henderson County, Texas (Tr.Ct.No. CV21-0575-173)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, because it is the opinion of this Court that there was error in the judgment of the court below, it is ORDERED, ADJUDGED and DECREED that the trial court's order denying the motion to dismiss be **reversed**, and judgment **rendered** dismissing Appellees' claims. It is further ORDERED, ADJUDGED and DECREED that the case be **remanded** for a determination of court costs and attorney's fees to be awarded, and a determination of an award of sanctions, if any, and for **further proceedings** consistent with this opinion, and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*